## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**AL JEROME JACKSON**                                    **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO 1:17-cv-48-LG-JCG**

**NANCY A. BERRYHILL,**                                    **DEFENDANT**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY**


### REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), the claimant Al Jerome Jackson seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for Social Security Disability benefits. The Commissioner found that Jackson was not disabled, as defined by the Social Security Act, despite his severe impairments of post-traumatic stress disorder (PTSD), depression, and anxiety. The Administrative Law Judge (ALJ) determined that Jackson could return to his previous work or, alternatively, that other work exists in the economy that Jackson could perform. The undersigned submits this Report and Recommendation to the District Judge and recommends that Jackson's appeal be dismissed and the Commissioner's final administrative decision be affirmed.

### I. Background

A. <u>Procedural Background</u>

Mr. Jackson was forty-eight at the time of the hearing before the ALJ. He is five feet, seven inches tall and weighs 185 pounds. He completed one year of

welding training after high school. He has been diagnosed with PTSD, depression, anxiety, lower back pain, and diminished hearing in his right ear.  Jackson filed a Title II application for a period of disability and disability insurance benefits (DIB) on May 27, 2014, with an alleged onset date of March 22, 2010. Jackson's last date insured for purposes of the Title II application was March 31, 2016.

Jackson's claim was initially denied on July 15, 2014 and upon reconsideration on November 14, 2014. Jackson filed his request for a hearing before an ALJ on January 8, 2015. The ALJ heard Jackson's case on July 25, 2016 in Gulfport, Mississippi. The ALJ heard testimony from Jackson as well as a vocational expert (VE). The ALJ issued a decision unfavorable to Jackson on August 23, 2016.

B. The ALJ's Findings

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R § 404.1520. The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is

2

disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 of Subpart P to 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(d). Accordingly, if a claimant's impairment meets the requisite criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525.

Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental demands of his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner at step five to prove, considering the claimant's residual functional capacity (RFC), age, education and past work experience, that he is capable of performing other work. 20 C.F.R. § 404.1520(f)(1). If the Commissioner proves other work that the claimant can perform exists (in significant numbers in the national economy), the claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the instant case, the ALJ found at step one that Jackson had not engaged in substantial gainful activity since March 22, 2010, the alleged onset date. At step two, the ALJ found that Jackson had severe impairments of PTSD, depression, and anxiety. The ALJ also found that Jackson may suffer from low back pain and diminished hearing in his right ear, but that these impairments only constituted slight abnormalities that did not interfere with his ability to work. At step three, the ALJ determined that Jackson did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed

impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404.

Next, the ALJ determined that Jackson retained the residual functional

capacity to perform a full range of work at all exertional levels, with some

nonexertional limitations. The ALJ concluded that Jackson is limited to "simple,

routine, and repetitive tasks with only occasional contact with the general public,

coworkers, or supervisors," finding that

> [t]he claimant's medical record shows a long history of [PTSD]
> symptoms. The claimant was noted to display significant PTSD
> symptoms as well as adjustment disorder with anxiety and
> depression. . . . [but] he benefitted from [a residential therapy
> program] and . . . [d]uring an outpatient therapy session . . . the
> claimant reported he was still having "down days" but they were not
> as bad as before. . . . On multiple occasions, [Jackson] reported
> medication compliance and he stated that his current regimen was
> helpful in managing his symptoms. . . . [A]lthough the claimant
> continued to complain of chronic symptoms of PTSD, he was stable
> and showed some efficacy in managing his thoughts, feelings, and
> behaviors related to his disorder. . . . The evidence and his testimony
> shows he can and does socialize and interact with other people
> frequently, consistently, and on many levels . . . .

ECF No. 8, at 31-34.

At step four, the ALJ concluded that Jackson could return to his past

relevant work as a laundry worker. The VE testified that Jackson had previously

worked as a material handler, a semiskilled job performed at the heavy exertional

level; as a mobile train driver, a semiskilled job performed at the light exertional

level;[1] and as a laundry worker, an unskilled job performed at the medium

---

[1] The VE original classified this job as a patient transporter, which is an unskilled job performed at
the medium level. However, Mr. Jackson testified that he did not assist the patients in and out of the

exertional level. *Id.* at 110-12. The VE testified that Jackson could return to his past work as a laundry worker. *Id.* at 112. The ALJ continued on to step five and found, in the alternative, that there are other jobs that exist in significant numbers in the national economy that Jackson can perform. The VE testified that several unskilled jobs existed in the economy that Jackson could perform at the medium level. These jobs include dishwasher, salvage laborer, and store laborer. *Id.* at 113.

Jackson requested review of the ALJ's decision by the Appeals Council on September 2, 2016. *Id.* at 14. The Appeals Council denied Jackson's request for review of the decision on October 18, 2016, thereby rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 8-11. Having exhausted his administrative remedies, Jackson commenced the present action by Complaint filed on February 27, 2017. ECF No. 1.

C. Smith's Medical Treatment History

As early as 1996, Jackson was diagnosed with a history of PTSD and depression. ECF No. 8 at 1395. However, his alleged onset date for purposes of this appeal did not occur until March 22, 2010. *Id.* at 182. According to Cynthia Helwig, N.P., after an incident where a coworker attempted to hit him, Jackson appeared nervous with poor concentration and memory; however, he demonstrated fair insight and judgment. *Id.* at 1859-61. She diagnosed Jackson with PTSD, Sleep Disturbances, Depression, and Anxiety. *Id.* at 1861.

---

golf cart; his job was merely taking patients from the parking lot to the front door of the VA. Therefore, the VE changed her classification to mobile train driver.

Over the next several years, Jackson frequently saw N.P. Helwig and psychologist Dr. Nathaniel Abston, among others. In addition to the initial diagnosis, N.P. Helwig was generally responsible for adjusting Jackson's medications. *See id.* at 1811-13, 1827-29. Jackson also had regular visits with Dr. Abston for treatment of his PTSD. *Id.* at 324-26, 342-44, 351-53, 388-90, 393-94, 1814-16, 1824-25, 1830. Jackson also participated in the "Coping Skill Cohort" from November 15, 2010 through December 10, 2010, and he was discharged "in stable condition." *Id.* at 405. He participated in another in-patient rehabilitation program from March 17, 2014 through May 7, 2014. His discharge summary indicated he had done well in the program and had acquired tools to manage his condition. *Id.* at 540-41. Nevertheless, Jackson's medical history does indicate ongoing problems with his PTSD.

## II. Standard of Review

Review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. Discussion

Jackson alleges four assignments of error in his brief: (1) the ALJ failed to properly weigh the medical opinion evidence; (2) the ALJ failed to adequately consider the disability decision from the Department of Veterans Affairs; (3) the ALJ failed to properly evaluate the plaintiff's testimony; and (4) the ALJ relied on a flawed hypothetical question to the VE.

A. <u>Medical Opinion Evidence</u>

The claimant's primary contention with the weight given to medical opinion evidence involves the opinions rendered by Dr. Abston. On October 7, 2010, Dr. Abston noted that although stable, Jackson "showed little efficacy in managing his thoughts, feelings, and behavior related to his disorders" and therefore "encouraged him to remain off work." ECF No. 8 at 1830. In December 2010, Dr. Abston noted that although Jackson had not returned to work, "he ha[d] been coping fairly well" and was stable. Dr. Abston did not note in this report whether he recommended that Jackson remain off work. *Id.* at 1824-25. Dr. Abston made similar reports after visits on August 26, 2011; November 13, 2012; January 4, 2013; July 25, 2013; January 7, 2014; and May 16, 2014. *Id.* at 324-26, 342-44, 351-53, 388-90, 393-94, 1814-16. However, in filling out a Mental Impairment Questionnaire in October 2014, Dr. Abston indicated that Jackson had a marked degree of limitation in almost all of the mental functioning areas, including remembering locations and work-like procedures, carrying out detailed instructions, sustaining an ordinary routine, and interacting appropriately with the public. *Id.* at 1315-18.

However, Dr. John Liberto, a psychiatrist, reported on June 7, 2010, that although he would recommend that Jackson not return to his current job, "[h]e could be placed at another work assignment." *Id.* at 1848. In a follow-up visit on July 7, 2010, Jackson told Dr. Liberto that he wanted to work and could work, but that he needed to be in a different area. *Id.* at 1844. Additionally, Jackson did "well" in his 2010 inpatient rehabilitation program known as the "Coping Skill

Cohort." *Id.* at 405. During his 2014 inpatient rehabilitation program, Jackson reported "general improvement," a "decrease in symptoms," and stated "he gained both tools for continued PTSD management and insight into his condition." *Id.* at 541. Further, Jackson testified that he attended his daughter's swim meets and an award ceremony; would be attending his son's graduation ceremony; takes care of his daily hygiene; attends church fairly regularly; prepares his own meals, including a "full course meal"; and takes his dog to the dog park daily and exchanges pleasantries with others there. *Id.* at 81-82, 88, 90, 92, 97-98.

Because of these inconsistencies, the ALJ gave little weight to Dr. Abston's opinions, finding them "inconsistent with the record as a whole, especially the claimant's testimony regarding his activities of daily living and his progress notes from the VA." *Id.* at 38. "[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). However, if good cause is shown, the ALJ is entitled to give little or no weight to a treating physician's testimony. Examples of good cause include statements that are "brief and conclusory," statements that are "not supported by medically acceptable clinical laboratory techniques," and statements that are "unsupported by the evidence." *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) (quoting *Greenspan*, 38 F.3d at 237).

Further, 20 C.F.R. § 404.1527(c)(2) states that a treating source's medical opinion will be given controlling weight if it is well supported and "not inconsistent with the other substantial evidence in [the] case record." If it is not given controlling weight, the regulation provides that several factors will be evaluated in determining the weight it is given. These include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the treating physician, and other factors brought to the Commissioner's attention. Ultimately though, [c]onflicts in the evidence are for the [Commissioner] . . . to resolve. *Selders*, 914 F.2d at 617 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). Given the inconsistencies in Dr. Abston's own reports, such as noting the patient was stable and "showing efficacy in managing his thoughts" while noting "impulsive or damaging behavior," "illogical thinking," and "obsessions or compulsions" on the Mental Impairment Questionnaire, as well as the inconsistencies with other evidence in the record, the ALJ was entitled to give little weight to Dr. Abston's opinion, and this determination is supported by substantial evidence. *Compare* ECF No. 8 at 325, *with id.* at 1316.

B. <u>Decision from the VA</u>

In a letter dated September 12, 2012, the VA informed Jackson that they found him unable to work due to his "service connected disability/disabilities." ECF No. 8 at 169. In a letter dated April 18, 2016, the VA indicated that June 15, 2015

was the date Jackson was granted a total disability rating for his service connected

PTSD. *Id.* at 216. In the "Explanation" section, this letter states:

> [a]n evaluation of 100 percent is assigned whenever there is evidence
> of total occupation and social impairment, due to such symptoms as:
> gross impairment in thought processes or communication; persistent
> delusions or hallucinations; grossly inappropriate behavior; persistent
> danger of hurting self or others; intermittent inability to perform
> activities of daily living (including maintenance of minimal personal
> hygiene); disorientation to time or place; memory loss for names of
> close relatives, own occupation, or own name.

*Id.* The VA found that Jackson was entitled to a 100 percent evaluation due to his

*total* occupational and social impairment, persistent *delusions* and *hallucinations*,

and impaired impulse control, among other factors. *Id* (emphasis added).

      However, the record does not lend credence to this evaluation. In fact, N.P.

Helwig indicated in May 2010 that Jackson's thoughts were "logical and goal-

directed," he demonstrated "[f]air insight and judgment," and that there was no

evidence of delusions. *Id.* at 1852. During July 2015, just a month after the effective

date of the VA's PTSD disability rating, N.P. Helwig reported that Jackson had a

history of good coping skills, future oriented plans, and was overall low risk. *Id.* at

1576-77.  Given this evidence and Jackson's testimony about his daily activities, the

ALJ found that the VA ratings were "inconsistent with the objective evidence and

admissions of record," and further noted that "the determination of disability is an

opinion on an issue solely reserved to the Commissioner of Social Security." *Id.* at

38. Thus, the ALJ declined to give "great weight" to these ratings, noting that a

"statement by another agency or medical source that the claimant is 'disabled,'

'unable to work,' or on 'long-term disability,' does not mean the claimant will be

determined to be disabled . . . . Indeed, the rules governing Department of Veterans Affairs and Social Security disability are very different." *Id.*

The Fifth Circuit has previously ruled that although it has "sometimes referred to a VA disability determination as being entitled to 'great weight,'" that is not always the case. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Instead, the weight to be given to such a rating depends on the facts of the case, and since "the regulations for disability status differ between the SSA and the VA, ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so." *Id.* Because the ALJ evaluated the evidence and found the evidence inconsistent with the VA ratings, the ALJ properly considered the rating decisions, and the ALJ's determination is supported by substantial evidence.

C. Plaintiff's Testimony Concerning his Symptoms

Jackson next alleges that the ALJ failed to properly evaluate his testimony concerning the intensity, persistence, and limiting effect of his symptoms. Under 20 C.F.R. § 404.1529, the ALJ first determines if there is a medically determinable impairment that "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Once such an impairment is found, the ALJ then will "evaluate the intensity and persistence of [the claimant's] symptoms" in order to determine how those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). The ALJ is to consider all of the evidence, including the claimant's own testimony, medical history, medical signs, and laboratory findings.

20 C.F.R. § 404.1529(a). Other factors the ALJ may consider in determining the extent to which a claimant's symptoms affect his or her ability to work include: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) medications taken to alleviate symptoms; (v) other treatment for the symptoms; (vi) other measures taken to relieve the symptoms; and (vii) other factors concerning the claimant's functional limitations or restrictions resulting from the symptoms. 20 C.F.R. § 404.1529(c)(3). However, the evidence must be "consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

Here, the ALJ found that Jackson's impairments could reasonably cause his alleged symptoms. However, she found that his "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence." ECF No. 8 at 35. Jackson contends that the ALJ's consideration of his testimony was not sufficient, arguing that it focused only on his activities of daily living. ECF No. 10 at 21-22. However, daily activities are one of the factors the ALJ is to consider, and this argument ignores the ALJ's discussion of Jackson's medical history, including records from Dr. Abston. ECF No. 8 at 35-37. Because the medical evidence shows that Jackson was stable and "showed efficacy in managing his thoughts, feelings, and behaviors related to his disorder," and because Jackson's own testimony indicates he was able to interact with others, the ALJ's determination that his alleged degree of limitation lacked credibility was supported by substantial evidence. ECF No. 8 at 36-38.

Ultimately, this credibility determination is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

    D. <u>Hypothetical Question</u>

    Jackson's final argument is that the hypothetical presented to the VE "failed to accurately describe all of the mental limitations identified in the ALJ's decision." ECF No. 10 at 22. He contends that because the ALJ found him to have moderate limitations in social functioning and moderate limitations in maintaining concentration, presenting the VE with a hypothetical individual "limited to simple routine and repetitive tasks, with only occasional contact with the general public, coworkers and supervisors" is reversible error. ECF No. 8 at 32, 112-13. Jackson contends that the Fifth Circuit has not addressed this issue; he instead relies on decisions from other circuits and other district courts.

    However, the Fifth Circuit has found that an RFC limiting a claimant to one to two step instructions, prohibiting her from dealing with heavy stress, and limiting public interaction properly incorporated a finding that the claimant had moderate limitations in concentration, persistence, and pace. *Bordelon v. Astrue*, 281 Fed App'x 418, 422 (5th Cir. 2008). Similarly, the Southern District of Mississippi has found that an RFC limiting the claimant to "performance of simple, routine and repetitive tasks with only occasional interaction with the public," properly accounted for moderate restrictions in ability to maintain social functioning and concentration. *Ealy v. Colvin*, Civil Action No. 3:13-CV-409-TSL-JCG, 2014 WL 3928193, at *1-2 (S.D. Miss. Aug. 12, 2014).  This is the situation

presented here. "[E]very single limitation, such as difficulty in concentration, pace
and/or persistence, need not be explicitly named in the hypothetical, but rather
need only be reasonably incorporated." *Id.* at 2. Therefore, this claim is without
merit.

## IV. Recommendation

Having considered the briefs filed by Jackson and the Commissioner, the
record, and the relevant legal authority, the undersigned United States Magistrate
Judge recommends that the Commissioner's decision be affirmed.

## V. Notice of the Right to Object

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and
> recommendations, each party has fourteen days to serve and file written
> objections to the report and recommendations. A party must file
> objections with the clerk of court and serve them upon the other parties
> and submit them to the assigned district judge. Within seven days of
> service of the objection, the opposing party or parties must either serve
> and file a response or notify the district judge that they do not intend to
> respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and
recommendations to which he objects. The District Judge need not consider
frivolous, conclusive, or general objections. A party who fails to file written
objections to the proposed findings, conclusions, and recommendations within
fourteen (14) days of being served a copy shall be barred, except upon grounds of
plain error, from attacking on appeal any proposed factual finding or legal

conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 10th day of July, 2018.

*s/ John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE